IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THOMAS R. MASTERSON, ) | |
| ) | Case No.: CV 06-163-S-EJL |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM ORDER** |
| ) | |
| SWAN RANGE LOG HOMES, LLC, an ) | |
| Idaho limited liability company; KYLE ) | |
| LANIER, an individual; YELLOWSTONE ) | |
| LOG HOMES, LLC, d/b/a ) | |
| YELLOWSTONE DO IT CENTER, an ) | |
| Idaho limited liability company; PEAK ) | |
| GLASS, INC., a Wyoming company; ) | |
| MICHAEL J. SHIDNER and KATHY L. ) | |
| SHIDNER, husband and wife, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |

## INTRODUCTION

Plaintiff Thomas R. Masterson ("Masterson") filed a motion for partial summary judgment against Defendants Swan Range Log Homes, LLC ("Swan Range") and Kyle Lanier ("Lanier") on his claims for breach of contract and fraud and on Defendants' counterclaims. The parties have submitted their memoranda and the motion is now ripe for decision.

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be

significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.[1]

## BACKGROUND

In the summer of 2004, Lanier and Swan Range engaged in discussions with Masterson for the construction of a log home for Masterson in Jackson, Wyoming. During these negotiations Lanier presented himself as an experienced log home contractor. Masterson was also under the impression that Lanier was an agent of Yellowstone Do It Center ("Yellowstone") when he was nothing more than a regular customer. The discussions between Lanier and Masterson also failed to bring to light that Lanier had pled no contest to charges in Wisconsin dealing with theft by contractor.

These interactions between Lanier and Masterson resulted in the parties entering into a contract for the construction of a log home on July 19, 2004. See Declaration of Robert Coleman, Docket No. 70, Exhibit 1. The contract set the projected cost of the home at $1,240,630.00 and consisted of a simple five page form contract, with hand-written modifications and an attached bid-sheet with only one bid for each component of the project. The contract was not for a fixed amount as the contract states:

---

[1] The Court acknowledges that Plaintiff requested oral argument when he filed his motion for partial summary judgment. This Court normally does not hold hearings on motions of this nature where the briefs adequately present the legal arguments. Moreover, Dist. Idaho Loc. Civ. R. 7.1 controls when hearings will be scheduled by the Court. The Ninth Circuit has held that hearings are not required if the parties have been given fair notice and an opportunity to present their arguments to the court, along with exhibits and affidavits. *See e.g. Bank of Lake Tahoe v. Bank of America*, 57 Fed. Appx. 310 (9th Cir. 2003).

Memorandum Order                            -2-

> TOTAL CONTRACT PRICE IS  $1,235,000[2]
> CONTRACT PRICE IS ONLY AN ESTIMATED PRICED DUE TO THE
> CHANGE IN MATERIAL PRICING, INCLUDED IN CONTRACT IS A
> SHEET WITH ALL ALLOWANCES, HOMEOWNER WILL BE NOTIFYED
> (sic) AS MATERIALS ARE ORDERED OF ANY CHANGES.

The contract contains ambiguous language with respect to change orders, the process for submitting a change order, and if change orders are necessary for any changes in material prices.

> MODIFICATION OF AGREEMENT
> Any modifications of contract will be done on a change order and payment due on signing of contract no work will be performed till contract is signed and payment is made contracts are binding and legal.

Two written change orders were executed by the parties dealing with types of materials to be used for radon piping and chinking of the logs.  No change orders were ever submitted that dealt with change in pricing of materials or services.  It is undisputed that Plaintiff made significant changes to the project after the contract was executed regarding the size and shape of the garage and the great room.  These changes were not in writing but orally agreed to by the parties. Masterson was aware these changes would increase the cost of the project.

Lanier and Swan Range represented to Masterson that they would supervise and manage construction of the log home.  Lanier and Swan Range also represented that all subcontractors and supplier costs would be paid in a timely fashion to avoid any construction liens being filed on the property.  The bid sheet attached to the contract provides for a "general fee" of $100,000.  It appears the parties intended this phrase to mean the general contractor fee Masterson would pay to Swan Range for supervising and managing the construction of the home.  The contract

---

[2] The amount of the contract in this portion of the contract differs from the total costs reflected on bid sheet attached to and incorporated into the contract which has a total of $1,240,630 after $5,000 is handwritten in for Garbage.

does not set forth the manner in which the contractor is entitled to be paid the general fee. Lanier claims any monies he put into his personal accounts were related to the "general fee" he was entitled to under the contract. Masterson claims Lanier improperly billed costs for his personal expenses and for another cabin being built for Lanier to his project.

Masterson paid more than $719,000 to Lanier and Swan Range for materials and labor so that the construction of the log home could proceed. On or about August 16, 2005, Lanier and Swan Range abandoned construction of the log home without having completed significant portions of the work. Lanier claims he abandoned the project when it became clear that Masterson would no longer pay and is the basis for Lanier's counterclaim against Masterson for breach of contract. Lanier's last bill to Masterson was in the amount of $121,273.99 for charges to expand the great room and to finish changes made to the front entry and portal which Lanier maintains were orally requested by Masterson. However, the record before this Court supports a finding that Masterson did not have a reasonable opportunity to pay such bill prior to Lanier abandoning the work site two days after the date of the last invoice.

In order to complete the work covered by the contract and pay out-standing bills acquired by Lanier and Swan Range, Masterson expended an additional $892,990.80. Masterson also paid $42,500 to satisfy liens and claims against the log home. Masterson also claims to have expended significant amounts of his own time in order to supervise and manage the completion of the log home.

## STANDARD OF REVIEW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

An issue must be both "material" and "genuine" to preclude entry of summary judgment. An issue is "material" if it affects the outcome of the litigation. To be considered "genuine" an issue must be established by "sufficient evidence supporting the claimed factual dispute... to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir. 1975) (*quoting First National Bank v. Cities Service Co. Inc.,* 391 U.S. 253, 289 (1968)). The Ninth Circuit follows the same standard. *See, e.g., British Motors Car Distrib. v. San Francisco Automotive Indus. Welfare Fund,* 882 F.2d 371 (9th Cir. 1989).

In order to withstand a motion for summary judgment the Ninth Circuit requires a party,

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distr.,* 882 F.2d at 374 (citation omitted).

When applying the standards explained *supra* the Court must view all of the evidence in the light most favorable to the non-moving party. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Hughes v. United States,* 953 F.2d 531, 541 (9th Cir. 1992).

## CHOICE OF LAW

The parties agree the substantive law to be applied by the Court is the law of the state the contract was entered and the log home built. Accordingly, the Court will apply Wyoming state law to the substantive issues in this case.

## ANALYSIS

Masterson seeks summary judgment on his claims for breach of contract and fraud, as well as Lanier's and Swan Range's counterclaim. The Court will address each claim in turn.

Masterson's Breach of Contract Claim

Masterson asserts that summary judgment is appropriate on the issue of breach claiming that Lanier and Swan Range breached by: (1) abandoning the project before completion, (2) failing to supervise the site appropriately, (3) improperly diverting money from the project, and (4) performing defective work. Lanier and Swan Range claim that a material question of fact exists with respect to each one of those claims making summary judgment inappropriate. The Court, after reviewing all of the material submitted by the parties, finds that summary judgment on Masterson's breach of contract claim would be inappropriate at this time as there are disputed issues of material fact.

In order to determine if the contract was breached by abandoning the project the Court must interpret the contract which is typically for the court as a matter of law. *See Hoff v. City of Casper-Natrona County Health Dept.,* 33 P.3d 99, 103 (Wyo.2001). Courts should "give effect to the intent of the parties to a contract when such intent is expressed in clear and unambiguous

language." *Rissler & McMurry Co. v. Sheridan Area Water Supply*, 929 P.2d 1228, 1233 (Wyo. 1996).  However, "[i]f the meaning of a contract is ambiguous or not apparent, it may be necessary to determine the intention of the parties from evidence other than the contract itself, and interpretation becomes a mixed question of law and fact." *Hoff* at 103.

The contract used for the construction of the log home at issue was a simple five page contract that clearly did not address all of the issues a contract for a project of this type should address.  Masterson is a sophisticated businessperson and he had the opportunity to modify the contract before entering the contract, but choose not to do so beyond the minimal interlineations noted on the contract.  No where in the contract does it explicitly state that change orders must be done in writing.  The contract also states that "home owner will be notified as materials are ordered of any changes." But the contract does not expressly state if this notice must be done in writing.  The ambiguity of the contract language, coupled with the simplistic nature of the contract for a project in excess of one million dollars convinces the Court that it is necessary to further examine evidence other than the contract itself to correctly determine the intentions of the parties involved.

Arguably, the ambagious language in the contract regarding change orders could have been  modified by the course of conduct of the parties since there are undisputed examples of significant changes to the project not being in writing, but having occurred..  In *Huang Intern., Inc. v. Foose Const. Co.*, 734 P.2d 975, 978 (Wyo. 1987) the court held "[t]he habitual disregard of a provision which requires that change orders be in writing, if determinable as a matter of fact, can amount to a waiver of the contractual requirement."  In *Huang*, "(1) the parties agreed that the contract documents did not include finalized plans and specifications; (2) as the project

progressed, the parties orally agreed to work which far exceeded the original intent of the contract; and (3) there were no written change orders provided at any time during the construction." *Rissler & McMurry Co. v. Sheridan Area Water Supply*, 929 P.2d 1228, 1234 (Wyo. 1996). To establish waiver, the Defendants must show some facts which indicate that the parties mutually adopted a mode of performing the contract which differs from its terms. *Quin Blair Enterprises, Inc. v. Julien Const. Co.*, 597 P.2d 945, 951 n. 6 (Wyo.1979). This is a disputed factual situation for the parties since Plaintiff maintains all change orders needed to be in writing since the contract states "any modifications of contract will be done on a change order" which implies a writing. Lanier argues the contract does not require the change orders to be in writing and they had a course of conduct that allowed oral change orders on the project such as the expansion great room and garage which Plaintiff knew would increase the cost of the project,

Since the Court has determined the intent of the parties is not clearly set forth in the contract and genuine issues of material fact exist regarding how the parties interpreted and acted under the contract, summary judgment is not appropriate. *See Examination Management Services, Inc. v. Kirschbaum,* 927 P.2d 686, 689 (Wyo. 1996).

A genuine issue of material fact also exists with respect to the other three reasons Masterson claims the contract was breached. Those claims consist of improper supervision, improper diversion of funds and defective work. Masterson supports all of these claims by citing to his own concise statement of material facts. However, Lanier and Swan Range dispute all of those factual claims and contend that the work site was properly supervised, funds were properly managed and work was performed in an adequate manner. There simply is not sufficient

Memorandum Order                                -8-

evidence presented by either side to warrant a ruling at the summary judgment stage.  There still exists a possibility that "reasonable minds might differ" and therefore "summary judgment is improper."  *Jasper v. Brinckerhoff,* 179 P.3d 857, 862 (Wyo. 2008).

Masterson's Fraud Claim

Masterson seeks summary judgment on his fraud claim based on several accusations including: (1) Lanier misrepresented himself as an agent of Yellowstone Do It Center; (2) Lanier misrepresented his intentions with regard to managing the site; (3) Lanier represented he would not improperly use funds; (4) Lanier failed to disclose the existence of pending criminal charges in Wisconsin.  Masterson supports these claims in the same way he supported his claims dealing with breach of contract by simply citing his own concise statement of material facts.[3]  Lanier refutes all of these claims except for the existence of a no contest plea in Wisconsin.  After reviewing the materials presented by the parties, the Court finds it improper to enter a summary judgment ruling at this time for the reasons stated below.

The first three allegations all qualify as material, but they are also in dispute.  Masterson has not presented sufficient evidence to the Court to meet the standard required for entering a ruling at the summary judgment stage.  In order for the Court to enter a summary judgment ruling the evidence must be such that reasonable minds could not differ.  *See Jasper*, 179 P.3d at 862.  The evidence currently before the Court consists of little more than Masterson's statements versus Lanier's statements.  Moreover, for purposes of this motion for summary judgment, the

---

[3]Masterson has provided the Court with additional evidence with respect to the allegation of fraud charges against Lanier in Wisconsin.  The Court will address this aspect of the fraud claim separately.

non-moving parties' facts are viewed in a light most favorable to the Defendants.  Such a factual dispute between the parties creates a situation where reasonable minds could differ and therefore summary judgment would be improper.

The last allegation, and the one Masterson claims as the key issue in his fraud claim, is that Lanier fraudulently withheld information dealing with a criminal charge in Wisconsin.  Masterson seeks to support this allegation as fraudulent under the doctrine of constructive fraud.  Masterson cites *Birt v. Wells Fargo Home Mort., Inc.,* 75 P.3d 640, 655 (Wyo. 2003)*,* which held "acts, omissions, and concealment involving breaches of a legal or equitable duty resulting in damage to another . . . exists where such conduct, although not actually fraudulent, ought to be so treated when it has the same consequence and legal effects."  It is true that Lanier's failure to inform Masterson of his legal issues in Wisconsin could qualify as an omission to meet the first element of a constructive fraud claim.  However, Masterson has failed to demonstrate to the Court that Lanier was under any legal or equitable duty to inform Masterson of his legal issues in Wisconsin.  As a result, Masterson has not satisfied the elements of the law cited in *Birt* and the Court cannot grant Masterson's motion for summary judgment on his fraud claim.

Lanier's and Swan Range's Counterclaim

Lanier and Swan Range base their counterclaim on a letter written by Masterson to Lanier on July 13, 2005.  Lanier and Swan Range allege that the letter constitutes a breach of the contract asserting that in the letter Masterson refused to pay any additional funds to Lanier or Swan Range for the completion of the log home.  The Court has reviewed the letter and finds

that no reasonable person could consider the letter a refusal to pay and therefore a repudiation of the contract.

The letter does not contain any language stating a refusal to pay. The letter actually contains language requesting a meeting on July 18, 2005, so that a plan can be presented for completion of the project. In the letter, Masterson also acknowledges that $129,337.18 remain to be paid for completion of the project. The letter simply requests a plan to demonstrate how that money will be used to complete the project. If anything the letter demonstrates Masterson's desire to follow the contract, not terminate it. The Court finds that no reasonable person could interpret Masterson's letter as a repudiation of the contract and therefore grants Masterson's motion for summary judgment on Lanier's and Swan Range's counterclaim.

## ORDER

Based on the foregoing, and the Court being fully advised in the premises, it is **HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Docket #66) is **DENIED IN PART** and **GRANTED IN PART** as follows:

1. Plaintiff's Motion for Summary Judgment on his claim for breach of contract is **DENIED.**

2. Plaintiff's Motion for Summary Judgment on the claim of fraud is **DENIED.**

3. Plaintiff's Motion for Summary Judgment on Defendants' Counterclaim is **GRANTED.**

DATED: May 7, 2008

Honorable Edward J. Lodge
U. S. District Judge